IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 17, 2002 Session

## STATE OF TENNESSEE v. FREDERICK CORLEW

**Direct Appeal from the Circuit Court for Dickson County**
**No. CR5148     Allen Wallace, Judge**

---

**No. M2001-00842-CCA-R3-CD - Filed November 1, 2002**

---

The defendant was convicted of aggravated robbery, attempted aggravated rape, both Class B felonies, and theft, which the trial court merged with the aggravated robbery conviction. The trial court sentenced the defendant as a Range II, multiple offender to fifteen years for aggravated robbery and twenty years for attempted aggravated rape. The sentences were imposed consecutively. The defendant argues on appeal that the evidence is insufficient to support a conviction of aggravated robbery because the victim's belief was unreasonable that the defendant was armed; the evidence is insufficient to support a conviction of attempted aggravated rape because the victim learned that the defendant was, in fact, unarmed prior to the rape; and his sentence of thirty-five years is excessive. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Merrilyn Feirman, Nashville, Tennessee; William B. Lockert, III, District Public Defender; and Christopher L. Young, Assistant Public Defender, for the appellant, Frederick Corlew.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Suzanne M. Lockert, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

During the victim's May 30, 2000, overnight shift at the Par-Mart on Highway 46 in Dickson County, the defendant, Frederick Corlew, entered the store six times. The first five times involved the defendant's browsing, buying a beer, and making small talk with the victim, who was the only employee working at the time. During these times, both of the defendant's hands were in plain view.

However, on the sixth time, just before 1 a.m., the defendant hurriedly grabbed some merchandise and placed it on the counter as if to make a purchase, keeping his right hand in his pocket. There were no other customers in the store. The defendant then abruptly made his way behind the counter and forced the victim to open the cash register. He proceeded to stuff bills and coins in his left pocket with his left hand while continuing to hold his right hand in his right pocket in such a way as to make it appear that he was armed. According to the victim's trial testimony concerning the defendant's right hand, "I didn't know whether it was a gun or knife, but it appeared to be some type of weapon." The victim further testified that the defendant had something "bulky enough that I thought it was some type of weapon."

Immediately following the robbery, the defendant directed the victim to Par-Mart's back room where he ordered her to sit in a sink. He twice told the victim to pull down her pants. She refused and the defendant proceeded to take his penis out of his pants and ordered the victim to "suck on it until it came in [the victim's] mouth." It was then that the victim first saw the defendant's right hand and realized that he did not have a weapon. However, because of fear and the vulnerable position she was in, the victim unwillingly performed oral sex on the defendant. After about a minute, the defendant, unable to get an erection or ejaculate, withdrew his penis from the victim's mouth and told her "now I'm going to have to kill you." After threatening the victim, the defendant told her to stay in the back room for twenty minutes. The victim then got out of the sink and called the police. The defendant does not dispute that he raped the victim.

Officer Scott Hull of the Dickson Police Department testified that he was on duty and responded to the call regarding the robbery at the Par-Mart, which included a description of the perpetrator and his clothing. Immediately, he began looking for a person matching that description. As he was driving in the vicinity of the Par-Mart, where the crime had occurred, he spotted a person later identified as the defendant "in a driveway just off of Highway 47 East walking in the driveway, in a field towards it, around a trailer." He and another officer took the defendant into custody, recovering from him approximately $198.00. After the serial numbers of the bills had been recorded, he returned the currency to Laura Diaria, the manager of the Par-Mart. She testified that the store kept a record of the serial number of a two-dollar bill which was maintained in each cash register at the store. Comparing the serial number of a two-dollar bill recovered from the defendant with the record of the bill kept permanently in their cash register, she testified that the numbers were identical. Additionally, she said that, after reviewing their records, she determined that $198.00 had been taken from the Par-Mart cash register by the robber.

Detective Eddie Breeden of the Dickson Police Department testified that he responded to the dispatcher's call regarding the crime and interviewed the victim. He secured as evidence Par-Mart's videotape of the incident, and it was played for the jury during his testimony.

## ANALYSIS

The defendant presents three issues on appeal:

I.    The evidence presented is insufficient to support a conviction of aggravated robbery because the victim's belief that the defendant had a weapon was unreasonable.

II.   The evidence presented is insufficient to support a conviction of attempted aggravated rape because the victim should have known that the defendant did not have a weapon.

III.  The trial court imposed an excessive sentence.

## I. Sufficiency of Evidence as to Aggravated Robbery

The defendant argues that the evidence is insufficient to support his conviction for aggravated robbery, which the State disputes. In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). When the credibility of the witnesses was resolved by the jury in favor of the State, the appellate court "may not reconsider the jury's credibility assessments." State

v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000), cert. denied, 533 U.S. 953, 121 S. Ct. 2600, 150 L. Ed. 2d 757 (2001).

The defendant was charged with aggravated robbery under Tennessee Code Annotated section 39-13-402, which sets out its elements:

> (a) Aggravated robbery is robbery as defined in § 39-13-401:
>
> (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon;  or
>
> (2) Where the victim suffers serious bodily injury.

Tenn. Code Ann. § 39-13-402(a) (1997).

The defendant's argument is that, based on the evidence presented, the victim's belief that he was armed was unreasonable and the State, therefore, could not prove that the robbery was aggravated.  In support of this argument, he relies on State v. Daryl Anthony Jemison, No. 01C01-9303-CR-00107, 1994 Tenn. Crim. App. LEXIS 199, at *6 (Tenn. Crim. App., Nashville, Mar. 31, 1994) (holding that the jury could conclude "that the defendant possessed a deadly weapon from the manner in which the defendant had his hand in the jacket and his threat to shoot [the victim]"), perm. to appeal denied (Tenn. July 11, 1994), and State v. Aaron Cooper, No. 01C01-9708-CR-00368, 1998 Tenn. Crim. App. LEXIS 1015, at *10 (Tenn. Crim. App., Nashville, Sept. 29, 1998) (proof sufficient as to aggravated robbery when defendant "held his hand in the waistband of his pants 'as if he had a weapon,' and said to [the victim] 'Don't make me have to hurt you.'").  He argues that the manner in which his hand was in his pocket was inconsistent with his having a weapon and, coupled with his never explicitly threatening the victim, made unreasonable her belief that he was armed.

As we have stated, the surveillance videotape shows the defendant coming into the Par-Mart five times over the half-hour period prior to the robbery.  On each of these occasions, neither of the defendant's hands was in his pockets.  On these first five visits, he alternately came to the counter or walked in the store, sometimes sliding his right hand into his pants pocket seemingly to remove change.  However, on his sixth entry into the store that evening, in contrast to the other times, his right hand was in his right pants pocket as he came in and remained there as he walked past the cash register and even after he came around the counter and was standing with the victim, demanding her to "open the register."  The defendant continued to keep his right hand in his pocket and, with his left hand, removed bills from the cash register, apparently dropping some bills on the floor because he was using only one hand to handle the money.  His posture made it appear that he had something in his right pocket.  All this time, the victim, according to her testimony, was in fear of the defendant and thought he had a weapon in his pocket.  Given the fact that during his previous entries into the store the defendant had exhibited both hands but, as he was robbing the victim, purposely kept his

-4-

right hand in his pocket, even though it caused him to drop bills on the floor, we cannot conclude that the victim's belief that he had a deadly weapon was unreasonable. Accordingly, we affirm the conviction for aggravated robbery.

## II. Sufficiency of Evidence as to Attempted Aggravated Rape

The defendant argues that the evidence is insufficient to support a conviction of attempted aggravated rape. The State responds that the evidence is sufficient to support the conviction.

The defendant's argument concerning the charge of attempted aggravated rape is essentially the same as his argument concerning the charge of aggravated robbery: because he took his right hand out of his pocket before the rape occurred, it was not reasonable for the victim to believe he had a weapon. Unlike the aggravated robbery conviction, which the jury determined had been completed, the defendant here was convicted only of attempted aggravated rape. Therefore, we must consider whether there is sufficient evidence to prove all the elements of attempted aggravated rape.

The relevant portions of the aggravated rape statute are as follows:

> (a) Aggravated rape is unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
>
> (1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon;

Tenn. Code Ann. § 39-13-502(a)(1) (1997).

"Attempt" is defined in Tennessee Code Annotated section 39-12-101:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances

-5-

surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

(c) It is no defense to prosecution for criminal attempt that the offense attempted was actually committed.

Tenn. Code Ann. § 39-12-101 (1997).

In order to convict the defendant of attempted aggravated rape, the State had to prove that the defendant intended to engage in unlawful sexual penetration of the victim using force or coercion with an article used or fashioned to lead the victim to reasonably believe it to be a weapon and that he took a substantial step to commit the offense.

Believing the defendant was armed with a weapon, the victim complied with his order and sat in a small "mop sink or drainage sink," the basin of which appears to be only a few inches higher than the floor, with the rim being less than a foot high. She testified that "he already had me at an angle where I would have had a difficult time getting out of" before she realized that he did not have a weapon. Only after she refused to pull down her pants did the defendant remove his right hand from his pocket to take his penis out of his pants. Thus, we conclude that the evidence is sufficient with respect to the aggravating element of the crime for the same reasons articulated in the aggravated robbery analysis: pretending to be armed, the defendant took the victim to the back part of the store and placed her in a low sink, in such a position that it would have been difficult to resist him. From the time the defendant robbed the store until after he had made the victim sit in the sink, nothing had happened to make unreasonable her belief that the defendant was armed. By this action, the defendant had taken the substantial step necessary to constitute criminal attempt. "Because of the infinite variety of factual situations that can arise, subdivision (a)(3) leaves the issue of what constitutes a substantial step for determination in each particular case." Tenn. Code Ann. § 39-12-101(a)(3), Sentencing Commission Cmts. In taking a substantial step, the defendant is not required to "actually begin some act that would approach sexual penetration." State v. Fowler, 3 S.W.3d 910, 912 (Tenn. 1999) (stating that a payment to an undercover police officer to procure underage sex is sufficient to qualify as a "substantial step" for an attempted statutory rape conviction). By forcing the victim into a vulnerable position[1] and twice ordering her to remove her pants, we conclude that a trier of fact could find that defendant's conduct constituted a substantial step towards the commission of aggravated rape. Furthermore, there was nothing about the

---

[1] The trial court noted during the sentencing hearing that the position the defendant forced the victim into rendered her "helpless" due to her weight and "meek" physical condition.

-6-

defendant's entire course of action that was not corroborative of his intent to commit the offense.

We conclude that a rational jury could find that there was sufficient evidence to prove all the elements of attempted aggravated rape beyond a reasonable doubt. Accordingly, the conviction for attempted aggravated rape is affirmed.

### III. Sentencing

The final claim the defendant raises on appeal is whether the trial court imposed an excessive sentence, both as to the length of the sentences and the fact they are to be served consecutively.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

Criminal sentences are imposed pursuant to Tennessee Code Annotated section 40-35-210. That statute reads, in pertinent part:

> (e) Should there be enhancement and mitigating factors for a Class B, C, D or E felony, the court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for

the enhancement factors, then reduce the sentence within the range as appropriate for the mitigating factors.

Tenn. Code Ann. § 40-35-210(e) (Supp. 1999).

The sentencing guidelines state that subsection (e) "requires a weighing process based on the merits of the various enhancement and mitigating factors." See id. § 40-35-210(e) (1997), Sentencing Commission Cmts. Further, "the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." State v. Boggs, 932 S.W.2d 467, 475-76 (Tenn. Crim. App. 1996) (citations omitted).

The defendant was sentenced as a Range II, multiple offender. For the offenses of which he was convicted, aggravated robbery and attempted aggravated rape, both Class B felonies, the possible sentence for the defendant as to each offense was not less than twelve nor more than twenty years. Tenn. Code Ann. § 40-35-112(b)(2) (1997). Thus, as to the aggravated robbery conviction, the trial court sentenced the defendant to three years more than the minimum sentence in the range, and, as to the attempted aggravated rape, the defendant was sentenced to twenty years, the maximum sentence.

In sentencing the defendant, the trial court considered the sentencing principles and relevant facts and circumstances. Thus, our review is *de novo* with a presumption of correctness. Ashby, 823 S.W.2d at 169.

In assessing this issue as to the length of the defendant's sentences, we note first that he has such an extensive criminal record that it is difficult to determine precisely even the number of convictions which he has amassed. However, it appears that he has, at least, eleven prior felony convictions: eight convictions for burglary third degree in 1980, 1981, 1983, 1984 (two convictions), 1985, 1987, and 1990; two convictions for petit larceny, one in 1984 and one in 1989; and one conviction for theft, $1,000 to $10,000, in 1993. Additionally, he had five misdemeanor convictions: three convictions for theft, two in 1994 and one in 1995; possession of cocaine in 1995; and criminal impersonation in 1995.

In sentencing the defendant to fifteen years as a Range II offender for aggravated robbery, the trial court recited the defendant's long list of convictions, beginning when he was twenty, and occurring on a regular basis since then, "[s]o since twenty years old, he's been just constant, just constantly in and out of the court system. So there's no question that he's had an extensive criminal record." As a result of the defendant's extensive record of prior convictions, the court applied enhancement factor (1), as well as enhancement factors (8), the defendant had a history of unwillingness to comply with terms of release into the community, and (9), the defendant "possessed or employed a firearm . . . during the commission of the offense." See Tenn. Code Ann. § 40-35-114(1), (8), (9) (1997). The trial court determined that one mitigating factor was applicable, that the defendant functioned in the low range of intelligence, but afforded little weight to this factor.

The defendant argues on appeal that only enhancement factor (1) was applicable and that the trial court should have applied as mitigating factors that the defendant's conduct neither caused nor threatened serious bodily injury and that he suffers from a "severe mental disability."

We now will consider these arguments.

We first will review the sentence imposed as the result of the aggravated robbery conviction. As we have stated, because the defendant has a very extensive record of convictions for both felonies and misdemeanors, the trial court correctly applied enhancement factor (1), that the "defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1) (1997). While it appears from the presentence report that the defendant committed burglary third degree in 1985 while on release, through parole or a suspended sentence, from a 1983 burglary third conviction, the record is not sufficiently clear as to allow us to do other than surmise this was the case. Accordingly, we conclude that enhancement factor (8), that the defendant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community," was not applicable. Tenn. Code Ann. § 40-35-114(8) (1997). The State concedes that enhancement factor (9), that the "defendant possessed or employed a firearm . . . during the commission of the offense," Tenn. Code Ann. § 40-35-114(9), was inapplicable, and we agree.

As for mitigating factors for the aggravated robbery conviction, the trial court applied as a factor that the defendant operated in the low range of intelligence. The defendant argues that the trial court should also have applied as a mitigating factor that his "conduct neither caused nor threatened serious bodily injury." Tenn. Code Ann. § 40-35-113(1) (1997). We note that the victim testified that she complied with the defendant during most of the episode because she believed that he was armed, so, to this extent, she felt threatened. Even if this factor was inapplicable, the trial court clearly was within its discretion in affording great weight to the defendant's twenty-year record of convictions. Thus, we cannot conclude that the defendant was sentenced improperly for the aggravated robbery conviction.

As to the attempted aggravated rape conviction, the trial court applied those enhancement factors which had been applied to the aggravated robbery conviction, as well as factors (4), that the victim "was particularly vulnerable because of age or physical or mental disability"; and, in the alternative, factor (5), that the "defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense"; or factor (7), the "offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement." Tenn. Code Ann. § 40-35-114(4), (5), (7) (1997). The defendant argues that only enhancement factor (1) was applicable.

We agree with the defense that, while enhancement factor (1) was applicable, the remainder of the factors were not. Factor (4), that the victim was particularly vulnerable, is, by its language, applicable when the victim is vulnerable because of age, physical, or mental disability. The fact that the victim was put in a position where it was difficult for her to resist or fight back does not make this factor applicable. See State v. Dean, 76 S.W.3d 352, 378 (Tenn. Crim. App. 2001), perm. to

appeal denied (Tenn. 2002). As for the application of enhancement factor (5), that the victim was treated with exceptional cruelty, we conclude, likewise, that this factor was inapplicable. Although any rape certainly is cruel and results in injury to the victim, this factor is applicable only when the treatment is "exceptional." See State v. Alexander, 957 S.W.2d 1, 6 (Tenn. Crim. App. 1997) ("exceptional cruelty" factor applicable when defendant "stabbed [the victim] several times in the face, including cuts through both eyelids, stabbed her twice in her body, and beat her in the head and arms with [a] claw hammer"). Likewise, as to the application of enhancement factor (7), the offense was "committed to gratify the defendant's desire for pleasure or excitement," we concur with the defendant's claim that this factor was inapplicable. The State's proof did not include statements by the defendant to the victim or evidence that he had fondled her so as to make this factor applicable. See State v. Arnett, 49 S.W.3d 250, 262 (Tenn. 2001). The trial court based the application of this factor upon the defendant, at age 21, having asked a psychiatric hospital nurse, "How do a man around here get with a woman and get him a little bit?" We cannot conclude that an isolated comment made by the defendant years earlier at a hospital justifies application of this factor. Thus, we agree with the defense that enhancement factor (7) was not applicable.

In sum, as to the conviction for attempted aggravated rape, enhancement factor (1), to which the court attached great weight, clearly was applicable. The only mitigating factor applied by the court was the fact of the defendant's limited intelligence. The defendant argues that the trial court should have applied as a mitigating factor that the defendant "did not cause nor threaten to hurt the victim." This factor, if applicable, would be entitled to little weight. We cannot conclude that the trial court erred in sentencing the defendant to twenty years, the maximum sentence for this offense, given his twenty years of steady criminal activity.

We now will determine whether the trial court erred in imposing consecutive sentences for these convictions.

As a general rule, consecutive sentences are imposed at the discretion of the trial court upon its consideration of one or more of the following statutory criteria:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person as declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (1997). These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. As the trial court observed, the defendant is "a professional criminal. He's devoted most of his adult life to acts of crime. He has an extensive history of criminal activity." That statement, which is supported by the facts and record, suffices to satisfy criteria (1) and (2) required to justify consecutive sentences.

## CONCLUSION

We conclude that the defendant has failed to demonstrate that the evidence was insufficient to support his convictions of aggravated robbery and attempted aggravated rape. Additionally, we conclude that the trial court's sentence was not excessive. We affirm the judgments of the trial court.

_____

ALAN E. GLENN, JUDGE